**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

19-2332
_____

SERGIO CALDERON-ROSAS,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,

Respondent
_____

On Appeal from the Board of Immigration Appeals
(Agency No. A215-589-441)
Immigration Judge:  Kuyomars Q. Golparvar
_____
Argued January 23, 2020

Before: GREENAWAY, JR., KRAUSE, and RESTREPO,
*Circuit Judges*

(Opinion filed: April 27, 2020)

Petra D. Fist [ARGUED]
P & D Solutions
1209 Kirkwood Highway

Wilmington, DE 19805
    *Counsel for Petitioner*


Christin M. Whitacre [ARGUED]
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
    *Counsel for Respondent*

_____

**OPINION OF THE COURT**
_____

KRAUSE, *Circuit Judge*.

Immigration law is a field in which fair, accurate fact-finding is of critical importance. The need in immigration proceedings for effective attorneys who can competently marshal the evidence on each side is therefore of commensurate importance. Yet aliens—often poor, often non-English speaking—are disproportionately saddled with low-quality counsel, and the consequences can be drastic. This is a case in point. Petitioner Sergio Calderon-Rosas paid a now-disbarred attorney to represent him in removal proceedings, and Calderon-Rosas was ordered deported after that attorney failed to present key evidence supporting his application for cancellation of removal. Calderon-Rosas sought a new hearing, arguing that he was deprived of due process by, among other things, his attorney's ineffective assistance, but the Board

of Immigration Appeals (BIA) denied his claims. We must decide whether we have jurisdiction to review due process claims where a petitioner, like Calderon-Rosas, seeks only discretionary relief—and if so, whether Calderon-Rosas's claims have merit. Because we conclude that we have jurisdiction and Calderon-Rosas plainly presents a meritorious ineffective-assistance claim, we will vacate the Board's decision and remand.

## I.  FACTUAL BACKGROUND[1]

Calderon-Rosas, a Mexican national, initially entered the United States in 2001. He has lived in the United States since 2001. Though he and his wife lack lawful immigration status, their three children are U.S. citizens. Before he was detained, Calderon-Rosas had been a reliable and well-liked contractor in the Norristown, Pennsylvania, area for eleven years. His neighbors consider him "pleasant and sociable" and his children "well dressed and polite." JA 379. At least until their father's detention by immigration authorities, the children were successful students at the local public schools, and the whole family was baptized in the Saint Patrick Church of Norristown, Pennsylvania, whose pastor considers them "hardworking, honest and compassionate." JA 370.

Yet in 2018, Calderon-Rosas was charged with a DUI—and while those charges were later dismissed, the Government nonetheless initiated removal proceedings. Desirous of remaining in this country, Calderon-Rosas hired attorney

---

[1] The facts here are drawn from the transcript of the removal hearing, the agency's decisions, and evidentiary attachments to Calderon-Rosas's administrative filings.

Douglas Grannan to represent him, and Grannan represented Calderon-Rosas at his removal hearing before an Immigration Judge (IJ). Grannan, however, was ill suited to the task: He would soon be disbarred for "multiple violations of the Rules of Professional Conduct in seven separate client matters" amounting to a "troubling pattern of neglect." *Office of Disciplinary Counsel v. Grannan*, No. 197 DB 2016, slip op. at 83 (Pa. Sup. Ct. Disciplinary Bd. Apr. 3, 2019), *report and recommendation adopted per curiam*, No. 2597 Disciplinary Docket No. 3 (Pa. July 9, 2019) (suspending Grannan); *Office of Disciplinary Counsel v. Grannan*, No. 177 DB 2019, slip op. at 1 (Pa. Sup. Ct. Disciplinary Bd. Oct. 18, 2019), *report and recommendation adopted per curiam*, No. 2660 Disciplinary Docket No. 3 (Pa. Oct. 18, 2019) (disbarring Grannan). The hallmarks of Grannan's "pattern of neglect" were a lack of client communication, a failure to submit appropriate documents, and a wanton disregard for his client's prospects of obtaining relief. *See, e.g.*, *id.* at 83, 85–93.

Grannan's representation of Calderon-Rosas was as poor as his record would predict. Calderon-Rosas sought to present claims for asylum, pursuant to 8 U.S.C. § 1158, and cancellation of removal, pursuant to 8 U.S.C. § 1229b(b). Yet, although Calderon-Rosas spent over $7000 on Grannan's services, Grannan never visited him in detention, never discussed his case with him over the phone, and never helped Calderon-Rosas understand the requirements for obtaining the relief he sought. Worse, Grannan failed to meaningfully pursue Calderon-Rosas's asylum application despite telling Calderon-Rosas that he would do so. And most troubling of all, Grannan did not obtain adequate medical records of Calderon-Rosas's children to support Calderon-Rosas's cancellation of removal application.

4

Not surprisingly, given the record before him, the IJ denied relief on all claims. As for asylum, the IJ deemed Calderon-Rosas's application abandoned, so the hearing proceeded only on Calderon-Rosas's cancellation of removal application. As for cancellation of removal, the IJ announced at the outset of the hearing that he would focus on the eligibility requirement that the petitioner demonstrate that a U.S. citizen family member—in this case, Calderon-Rosas's children—would suffer "exceptional and extremely unusual hardship," 8 U.S.C. § 1229b(b)(1)(D), if he were removed. In this respect, Grannan argued that Calderon-Rosas's oldest son had asthma, but as the IJ readily noted, the documentation Grannan had filed reflected that condition had been long under control such that "overall [the children's] health" appeared "good." JA 21. So while the IJ found that there "may even be extreme hardships" to Calderon-Rosas's children if he were deported— among them a loss of childcare and a loss of family savings— he found that their suffering would not meet the high threshold of "exceptional and extremely unusual hardship" to qualify Calderon-Rosas for cancellation. JA 21. Based on the information then available to him, the IJ also held in the alternative that he would have declined Calderon-Rosas's cancellation application as a matter of discretion.

After Calderon-Rosas's claims were denied, he obtained new counsel and filed with the BIA both a motion to remand to the IJ based on his original attorney's ineffective assistance before the IJ, and an appeal based on procedural due process violations alleged to have occurred during the IJ hearing. In support of the motion to remand and as required by regulation, 8 C.F.R. § 1003.2, Calderon-Rosas submitted new evidence, including medical records for his three children,

5

which demonstrated that his older son suffered from PTSD and a persistent and chronic adjustment disorder with symptoms of depressed mood and anxiety; his daughter also suffered from depression; and his younger son had "special needs" due to a speech delay.

The BIA denied the motion to remand and dismissed Calderon-Rosas's appeal. As to the motion to remand, the BIA explained only that it "conclude[d] that [Calderon-Rosas] ha[d] not established that he was prejudiced by his prior counsel [sic] alleged ineffectiveness" because he "ha[d] not established what additional corroboration he would have submitted that would have impacted the outcome of the case." JA 8–9. At the same time that it faulted him for failing to offer new evidence of corroboration, however, the BIA stated that "[t]o the extent that [Calderon-Rosas] seeks to submit new evidence on appeal in the form of evidence regarding his ineffective assistance of counsel claim . . . we are without authority to consider new evidence offered for the first time on appeal." JA 9. The BIA also found Calderon-Rosas's appeal of the IJ's decision on procedural due process grounds meritless.

Calderon-Rosas timely petitioned for our review of both the BIA's denial of his motion to remand and its dismissal of his appeal. He contends that the BIA abused its discretion in denying his motion to remand on grounds of ineffective assistance of counsel and that it erred in dismissing his procedural due process claims.

## II.    JURISDICTION AND STANDARD OF REVIEW

The BIA had jurisdiction over the motion to remand under 8 C.F.R. § 1003.2(a), and we have jurisdiction to review

6

its denial under 8 U.S.C. § 1252(a). We review the denial of a motion to remand for abuse of discretion, but "questions of law, such as whether the BIA applied the correct legal standard in considering the motion to [remand] and the underlying claim of denial of due process, are . . . reviewed de novo." *Fadiga v. Att'y Gen.*, 488 F.3d 142, 153–54 (3d Cir. 2007).

The BIA had jurisdiction over the appeal of the IJ's decision under 8 C.F.R. § 1003.1(b)(3), and we have jurisdiction to review its dismissal under 8 U.S.C. § 1252(a). We review its legal rulings de novo and its factual findings for substantial evidence. *Huang v. Att'y Gen.*, 620 F.3d 372, 379 (3d Cir. 2010).

## III.  DISCUSSION

Calderon-Rosas contends that he was denied due process because he received ineffective assistance of counsel in proceedings before the IJ and because the IJ disregarded various procedural regulations. The Government opposes Calderon-Rosas's claims on the merits, but also, as a threshold matter, challenges our jurisdiction, arguing that petitioners seeking discretionary relief cannot assert procedural rights under the Due Process Clause in this Court because they lack a protected liberty or property interest in such relief. Below, we first ascertain our jurisdiction[2] before addressing Calderon-Rosas's ineffective-assistance and procedural due process claims.

---

[2] We "always ha[ve] jurisdiction to determine [our] jurisdiction." *Orie v. Dist. Att'y Allegheny Cty.*, 946 F.3d 187, 190 n.7 (3d Cir. 2019) (quoting *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010)).

## A. Jurisdiction

Before we address the merits of Calderon-Rosas's claims, we must address a threshold question: Do we have jurisdiction over ineffective assistance of counsel or procedural due process claims—both of which flow from the Fifth Amendment's Due Process Clause in the immigration context, *Fadiga*, 488 F.3d at 155—made by a petitioner seeking discretionary relief? The question arises because, in this context, "[o]ur jurisdiction . . . is narrowly circumscribed in that it is limited to *colorable* [constitutional] claims or questions of law," *Pareja v. Att'y Gen.*, 615 F.3d 180, 186 (3d Cir. 2010) (emphasis added) (internal quotation marks and citation omitted); *see also* 8 U.S.C. § 1252(a)(2)(B), (D), and the Government asserts that petitioners cannot state any cognizable constitutional claim under the Due Process Clause because they lack a protected interest in discretionary relief.

The government's argument, however, is one we have squarely rejected. We long ago recognized that due process claims can be asserted by petitioners seeking discretionary relief because "Congress instructed the Attorney General to establish an asylum procedure," and "[w]hen Congress directs an agency to establish a procedure . . . it can be assumed that Congress intends that procedure to be a fair one." *Marincas v. Lewis*, 92 F.3d 195, 203 (3d Cir. 1996) (addressing asylum claim). "[F]airness," we explained, "mandate[s] that the asylum procedure promulgated by the Attorney General provide the most basic of due process." *Id.*; *see also Cham v. Att'y Gen.*, 445 F.3d 683, 691 (3d Cir. 2006) ("[A]lthough Cham has no constitutional right to asylum, he was entitled, as a matter of due process, to a full and fair hearing on his application."); *Ponce-Leiva v. Ashcroft*, 331 F.3d 369, 373–74

8

(3d Cir. 2003) ("Ponce–Leiva's brief . . . suggests that counsel's ineffectiveness was a denial of due process. Accordingly, we may analyze the claim, at least within the parameters of due process.").

More recently, in *Serrano-Alberto v. Attorney General*, 859 F.3d 208 (3d Cir. 2017), in exercising jurisdiction over claims for discretionary relief, we reiterated that "petitioners must receive a full and fair hearing that allows them a reasonable opportunity to present evidence on their behalf, and a decision on the merits of their claim by a neutral and impartial arbiter." *Id.* at 213 (internal quotation marks and citations omitted). That procedural due process right, we explained, is comprised of "three key protections" in immigration proceedings: "(1) 'factfinding based on a record produced before the decisionmaker and disclosed to him or her'; (2) the opportunity to 'make arguments on his or her own behalf'; and (3) 'an individualized determination of his [or her] interests.'" *Id.* (quoting *Dia v. Ashcroft*, 353 F.3d 228, 239 (3d Cir. 2003) (en banc)). In short, "[t]hroughout all phases of deportation proceedings, petitioners must be afforded due process of law." *Id.*

As our case law likewise establishes, ineffective assistance of counsel claims are no less cognizable by petitioners seeking discretionary relief. It is by now beyond question that the Due Process Clause guarantees aliens the right to effective assistance of counsel in removal proceedings. *Fadiga*, 488 F.3d at 155; *Matter of Lozada*, 19 I. & N. Dec. 637, 638 (BIA 1988). And as with procedural due process claims, we have never before discriminated among ineffective assistance of counsel claims based on whether the petitioners raising them sought discretionary or mandatory relief. *See,*

9

*e.g.*, *Filja v. Gonzales*, 447 F.3d 241, 250, 256 (3d Cir. 2006) (granting ineffective-assistance claim and remanding to the BIA for consideration of petitioner's claims for relief). That is because, as the Second Circuit has explained, "[r]uling on an ineffective assistance of counsel claim does not require us to substitute our discretion for that of the agency; it is simply a determination that the alien was not given a fair hearing because of counsel's errors." *Omar v. Mukasey*, 517 F.3d 647, 650 (2d Cir. 2008) (per curiam).

Our recognition of due process claims by petitioners seeking discretionary relief is consistent with bedrock principles of Supreme Court case law. The Supreme Court has explained that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings," *Reno v. Flores*, 507 U.S. 292, 306 (1993), because "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Thus, "aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *see also Wong Yang Sung v. McGrath*, 339 U.S. 33, 50 (1950) ("When the Constitution requires a hearing, it requires a fair one, one before a tribunal which meets at least currently prevailing standards of impartiality."). Our longstanding recognition of the right to a fundamentally fair hearing, *Serrano-Alberto*, 859 F.3d at 213, simply echoes these propositions.

Surprisingly, however, our sister Circuits range the gamut on whether this right extends to petitioners seeking

10

discretionary relief.[3]  And relying on some of those out-of-Circuit opinions, *see, e.g.*, *Rivera v. Sessions*, 903 F.3d 147,

[3] The Eighth and Eleventh Circuits either decline jurisdiction over procedural due process and ineffective-assistance claims for discretionary relief, or have decided that such claims are not cognizable in connection with discretionary relief proceedings. *Pinos-Gonzalez v. Mukasey*, 519 F.3d 436, 441 (8th Cir. 2008) (procedural due process); *Scheerer v. U.S. Att'y Gen.*, 513 F.3d 1244, 1253 (11th Cir. 2008); *Nativi-Gomez v. Ashcroft*, 344 F.3d 805, 808–09 (8th Cir. 2003) (ineffective assistance); *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1148 (11th Cir. 1999) (ineffective assistance). The First and Fifth Circuits exercise jurisdiction over ineffective-assistance claims, but have taken the same approach as the Eighth and Eleventh Circuits on procedural due process claims. *Mejia v. Whitaker*, 913 F.3d 482, 490 (5th Cir. 2019) (due process); *Diaz v. Sessions*, 894 F.3d 222, 226–27 (5th Cir. 2018) (ineffective assistance); *Rivera v. Sessions*, 903 F.3d 147, 151 (1st Cir. 2018) (due process); *Hernandez v. Reno*, 238 F.3d 50, 55–56 (1st Cir. 2001) (ineffective assistance). The Tenth Circuit exercises limited jurisdiction over procedural due process claims, *Salgado-Toribio v. Holder*, 713 F.3d 1267, 1271 (10th Cir. 2013), and has not addressed ineffective-assistance claims. The Second Circuit exercises jurisdiction over ineffective-assistance claims, *Omar v. Mukasey*, 517 F.3d 647, 650 (2d Cir. 2008) (per curiam), and has not addressed procedural due process claims. The Seventh Circuit exercises jurisdiction over procedural due process claims and the performance prong of ineffective-assistance claims. *Zambrano-Reyes v. Holder*, 725 F.3d 744, 750–51 (7th Cir. 2013) (ineffective assistance); *Delgado v. Holder*, 674 F.3d 759, 766 (7th Cir. 2012) (due process). The Ninth Circuit

151 (1st Cir. 2018), the Government argues that we lack jurisdiction to review any procedural due process or ineffective assistance of counsel claims made by aliens seeking discretionary relief.  The crux of its theory is that a "claim of deprivation of due process requires that a cognizable liberty or property interest be at stake," and "discretionary forms of relief do not rise to the level of such a protected interest."  *Rivera*, 903 F.3d at 150–51 (internal quotation marks and citations omitted).  The only cognizable liberty interest the Government would recognize is in the specific procedures provided by Congress, regardless of whether those procedures are administered fairly and impartially.

For the reasons previously stated, this argument is foreclosed by our case law.  *See Marincas*, 92 F.3d at 203; *Serrano-Alberto*, 859 F.3d at 213.  But more fundamentally, it conflates the existence of a statutory entitlement with the fairness of the process by which a petitioner may be deprived of it.  As an initial matter, a "liberty interest may arise from . . . an expectation or interest created by state laws or policies," *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005), and "a person's liberty is equally protected, even when the liberty itself is a statutory creation of the State," *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *Meachum v. Fano*, 427 U.S. 215, 226 (1976).  But it is equally true that "[w]hen Congress directs an agency to establish a procedure . . . it can be assumed that Congress

exercises jurisdiction over both procedural due process and ineffective-assistance claims.  *Fernandez v. Gonzales*, 439 F.3d 592, 602–03 (9th Cir. 2006) (ineffective assistance); *Antonio-Cruz v. INS*, 147 F.3d 1129, 1131 (9th Cir. 1998) (due process).

12

intends that procedure to be a fair one." *Marincas*, 92 F.3d at 203.[4]

The Government's position, moreover, would lead to absurd results: At oral argument, for example, the Government went so far as to posit that, so long as an alien seeking only discretionary relief had the opportunity to reasonably present evidence, he would have no cognizable due process claim—and hence, no recourse to the federal courts— even if the IJ denied that relief "based on the flip of a coin." Tr. 43. We think that conception of due process is not only inconsistent with our case law but would be anathema to our Founding Fathers. *See Chehazeh v. Att'y Gen.*, 666 F.3d 118, 130 (3d Cir. 2012) (stating that "substantive liberty rights and . . . due process rights" are both "areas that courts often are called upon to protect").

In sum, petitioners seeking discretionary relief are entitled to fundamentally fair removal proceedings, which constitutes a protected interest supporting a due process claim. Because Calderon-Rosas's due process claims are also colorable on their merits, as discussed below, our review of those claims is a proper exercise of jurisdiction.

---

[4] Ironically, even adopting the Government's constrained view of the process that is due to petitioners seeking discretionary relief, the ineffective assistance of counsel claim asserted here would be cognizable. That is because Congress has also provided a statutory right to counsel, *see* 8 U.S.C. § 1229a(b)(4)(A); 8 C.F.R. § 1240.3, and to present evidence, *see* 8 U.S.C. § 1229a(b)(4)(B).

13

**B. Ineffective Assistance of Counsel**

After the IJ denied relief, Calderon-Rosas moved to remand his proceedings on grounds of ineffective assistance of counsel. The BIA denied the motion, and he appealed.[5] He contends that Grannan's representation prevented him from obtaining a fundamentally fair hearing on both his cancellation of removal and asylum claims. We discuss each contention in turn.

1. Cancellation of Removal

Calderon-Rosas's motion to remand alleged that Grannan's failure to adduce sufficient evidence of his children's health conditions deprived him of a fundamentally fair hearing on his cancellation of removal claim. The BIA denied the motion. That decision was an abuse of discretion in two respects: It misapplied the legal standard and it was wrong on the merits.

First, the BIA misapplied the standard for assessing whether Calderon-Rosas had demonstrated he was prejudiced by Grannan's performance. The BIA held that Calderon-Rosas had not demonstrated that Grannan's performance "impacted the outcome of the [removal proceeding]." JA 9. But the familiar standard for prejudice in an ineffective-assistance claim is whether there is a "reasonable probability" that "the IJ would not have entered an order of removal absent counsel's errors." *Fadiga*, 488 F.3d at 159. That does not require a

---

[5] Our jurisdiction under 8 U.S.C. § 1252 embraces review of denials of motions to reopen. *Guo v. Ashcroft*, 386 F.3d 556, 560–61 (3d Cir. 2004).

14

petitioner to show counsel's deficient performance did, in fact, affect the outcome of the case, or even that a different outcome was "more likely than not"; instead, we have cautioned, "reasonable probability" means merely a "significant possibility." *United States v. Payano*, 930 F.3d 186, 193 n.5 (3d Cir. 2019). We have also admonished that in applying this standard, while the BIA need not "write an exegesis on every contention," it must "consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Filja*, 447 F.3d at 256 (internal quotation marks and citation omitted).

Here, the BIA failed to do so, and its application of the "reasonable probability" standard was erroneous. The entirety of its explanation for denying Calderon-Rosas's motion to remand was as follows: "[T]he respondent has not established what additional corroboration he would have submitted that would have impacted the outcome of the case. Moreover, we note that the Immigration Judge did not deny the respondent's application for cancellation of removal on the basis of a lack of corroboration." JA 9. As in *Filja*, "there is nothing in [this] one paragraph devoted to the ineffective assistance of counsel claim that is suggestive of [a sufficient] review or that [the BIA] grasped [Calderon-Rosas's] serious allegations supporting his ineffective assistance claim." 447 F.3d at 256. Indeed, the BIA entirely failed to discuss the significance of the hundred-plus pages of new evidence Calderon-Rosas submitted. Instead, paradoxically, it simultaneously faulted Calderon-Rosas for "not establish[ing] what additional corroboration he would have submitted," JA 9, despite clear briefing and evidence to the contrary, and pronounced that it was "without authority to consider new evidence offered for

15

the first time on appeal," *id.*, despite clearly applicable law to the contrary, 8 C.F.R. § 1003.2(c)(1) (requiring submission of new evidence to support motion to remand). To the extent the BIA did take account of the new evidence that it both failed to identify and incorrectly claimed it could not consider, it also misapprehended its significance: Calderon-Rosas did not seek to "corroborat[e]" the evidence he had submitted at the IJ hearing, JA 9; instead, he sought to introduce wholly new evidence of his children's health conditions. In short, the BIA's woefully inadequate reasoning fell well short of demonstrating that it "reviewed the record and grasped the movant's claims." *Filja*, 447 F.3d at 256.

If the BIA had applied the correct legal standard to the evidence set forth by Calderon-Rosas, it would have concluded, as we do, that his motion to remand should have been granted.[6] An alien seeking to reopen his immigration proceedings based on ineffective assistance of counsel must demonstrate that "competent counsel would have acted otherwise" and that he was "prejudiced by counsel's poor performance."[7] *Fadiga*, 488 F.3d at 157 (citations omitted).

---

[6] We have no need to remand for the BIA to reconsider its erroneous ruling. As in *Fadiga*, "it would be an act of supererogation for this [C]ourt to ask the BIA to determine whether [Grannan's] representation fell below minimal professional standards, thereby prejudicing [Calderon-Rosas]," because the "full record of [Grannan's] representation is before us, and we are competent to assess what transpired." *Fadiga*, 488 F.3d at 162.

[7] He must also meet certain procedural requirements set forth by the BIA for ineffective-assistance claims, *see Lozada*,

16

Of Grannan's incompetence there can be no doubt. We have held that an attorney's failure to produce easily available evidence supporting a claim for immigration relief falls below the constitutionally required standard of performance. *See Fadiga*, 488 F.3d at 162. Such a failure to produce evidence was precisely Grannan's error in the present case: He failed to adduce medical records that would have been easily obtainable with proper notice to Calderon-Rosas's family and that would have supported Calderon-Rosas's application for cancellation of removal. Indeed, the Government does not even argue that Grannan's performance met the constitutional minimum.

Rather, the disputed question is whether Calderon-Rosas was prejudiced by Grannan's errors. Again, the answer without question is yes. As we have explained, Calderon-Rosas must show only a "reasonable probability" that his cancellation of removal claim would have been granted had Grannan submitted evidence of his children's medical hardships. *Fadiga*, 488 F.3d at 159. In determining whether Calderon-Rosas was eligible for cancellation of removal, the IJ expressly announced that he would focus his attention on the question of whether "exceptional and extremely unusual hardship" would result for Calderon-Rosas's U.S. citizen children if he were removed. JA 253. And the seminal case construing that standard explains that a "strong" case of such hardship is presented by an alien with "a qualifying child with very serious health issues." *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 63 (BIA 2001). Yet the only medical evidence Grannan submitted related to a mild asthmatic condition in Calderon-Rosas's older son that was "under control," which

19 I. & N. Dec. at 639, but the Government does not dispute that Calderon-Rosas satisfied those requirements here.

17

led the IJ to conclude that the children's health was generally "good," JA 21. Grannan failed to adduce evidence that Calderon-Rosas's older son suffered from PTSD and a persistent and chronic adjustment disorder with symptoms of depressed mood and anxiety; that his daughter also suffered from depression; and that his younger son suffered from a speech delay.

Constitutionally adequate counsel would have introduced this evidence and, given the relevant precedent and the IJ's focus on hardship to Calderon-Rosas's children and on their "good" health, there is a reasonable probability the IJ would have granted cancellation. Calderon-Rosas is therefore entitled to a new hearing on his cancellation application.[8]

### 2. Asylum

Calderon-Rosas also contends that Grannan's ineffective assistance entitles him to a new hearing on his asylum claim. In support of this contention, he points to Grannan's failure to file a facially adequate asylum application and the IJ's consequent ruling that the application was abandoned. While surely deficient performance on Grannan's

---

[8] Though the IJ also held in the alternative that he would have denied Calderon-Rosas's application as a matter of discretion, his attention to Calderon-Rosas's children's hardship, particularly with respect to their health, suggests a reasonable probability that he would not have reached the same conclusion had the medical evidence been introduced. Thus, even if the Government had asked us to affirm on this basis, which it did not, we could not do so.

18

part, we are not persuaded that counsel's error prejudiced Calderon-Rosas.

A successful asylum applicant must demonstrate that he has a "well-founded fear of future persecution . . . motivated by a statutorily protected ground, namely the alien's race, religion, nationality, political opinion, or membership in a particular social group." *Huang v. Att'y Gen.*, 620 F.3d 372, 380 (3d Cir. 2010). Here, however, evidence in the record does not suggest that Calderon-Rosas can make that showing. Indeed, Calderon-Rosas has not seriously attempted to substantiate his asylum claim, relying instead on the unsupported proposition that the prejudice requirement in ineffective-assistance cases can be waived in particularly egregious circumstances.

The closest support we can find for this proposition is a Ninth Circuit rule that an attorney's "failure to file a necessary document creates a presumption of prejudice" which is rebutted where "the petitioner lacks plausible grounds for relief." *Hernandez-Mendoza v. Gonzales*, 537 F.3d 976, 979 (9th Cir. 2007) (internal quotation marks and citation omitted). We have not adopted that presumption, and we need not do so today: Even if it did apply, it would be rebutted here; the entirety of Calderon-Rosas's asylum evidence consists of an affidavit from his wife stating that she was sexually assaulted in Mexico many years ago and fears returning. That circumstance, while no doubt traumatic, pertains to Calderon-Rosas's wife's fear of persecution, not his own, and does not establish membership in a cognizable "particular social group." Calderon-Rosas therefore is not entitled to a new asylum hearing due to ineffective assistance of counsel.

## C. Procedural Due Process

Calderon-Rosas also alleges that six other due process violations occurred at his IJ hearing. Four of these claims, however, were not exhausted to the BIA as required for us to review them. *Bonhometre v. Gonzales*, 414 F.3d 442, 448 (3d Cir. 2005).

That leaves two exhausted procedural due process claims: the admission of Calderon-Rosas's inaccurate tax returns as evidence and the lack of an interpreter in the first part of his hearing. Neither, however, rendered the proceedings fundamentally unfair. *See Serrano-Alberto*, 859 F.3d at 213. Even granting Calderon-Rosas's contention that Grannan's poor planning and communication led him to hastily prepare and submit mistake-ridden tax returns into evidence, no prejudice resulted because the IJ did not consider them a negative factor. And while the IJ should have involved an interpreter from the outset of the hearing, this error did not render the proceedings fundamentally unfair. Indeed, at oral argument, Calderon-Rosas's counsel was unable to identify any portion of the hearing transcript that suggested Calderon-Rosas was prejudiced by the interpreter's initial absence. In the absence of prejudice, Calderon-Rosas was not deprived of due process by the alleged errors.[9]

---

[9] We do not find the presumption of prejudice articulated in *Leslie v. Att'y Gen.*, 611 F.3d 171, 178 (3d Cir. 2010) applicable to either of Calderon-Rosas's due process arguments as presented. Because, as Calderon-Rosas acknowledges, an interpreter was present for all but the introductory portion of the IJ hearing in this case, we need not decide whether the absence of an interpreter for the entirety or

**IV.    CONCLUSION**

For the foregoing reasons, we will reverse the BIA's denial of Calderon-Rosas's motion to remand and remand for a new hearing on his application for cancellation of removal, and we will affirm the BIA's dismissal of Calderon-Rosas's asylum claim.

---

even the substantive portion of a petitioner's hearing would trigger *Leslie*'s presumption.