**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 22-1354

JAIRO FABRIANO VELASQUEZ-CONTRERAS,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA

On Petition for Review of a Final Order
Of the Board of Immigration Appeals
(BIA No.:  A209-418-434)
Immigration Judge:  Charles M. Honeyman

Argued on November 16, 2022
and August 23, 2023

Before: AMBRO*, KRAUSE, and BIBAS, Circuit Judges

(Opinion Filed September 12, 2023)

Abdoul A. Konare **(Argued)**
Suite 101
5235 Westview Drive
Frederick, MD  21703

        Counsel for Petitioner

---

*Judge Ambro assumed Senior Status on February 6, 2023.

Jessica E. Burns **(Argued)**
John F. Stanton
Leslie McKay
United States Department of Justice
Office of Immigration Litigation
P. O. Box 878
Ben Franklin Station
Washington, DC 20044

        Counsel for Defendant

_____

OPINION[**]

_____

**AMBRO**, Circuit Judge[*]

Jairo Fabriano Velasquez-Contreras sought asylum, withholding of removal, and Convention Against Torture ("CAT") protection after allegedly suffering extreme hardship in Honduras. The Immigration Judge and Board of Immigration Appeals denied his claims because his counsel argued a defective legal theory. Velasquez-Contreras, armed with new counsel in this appeal, presented a new, potentially meritorious theory to us. But he did not raise that new theory to the Board of Immigration Appeals, so we cannot consider it. Thus, we deny his petition for review.

I

Velasquez-Contreras is a native and citizen of Honduras. In 2014, he and his father lived in San Juan Pueblo, a Honduran village. That year, a corrupt police officer recruited

_____

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Velasquez-Contreras's father to traffic drugs for a narco-trafficking gang. A.R. 264; 120. His father refused to do so and was murdered by a member of that gang as a result. *Id.*

Velasquez-Contreras reported his father's murder to the police, but that brought him only trouble. A.R. 145–46, 149–50. After he filed the police report, his father's murderer called him and threatened to murder him as well. A.R. 124. And later, the corrupt police officer who recruited his father to traffic drugs visited the home of Velasquez-Contreras to demand, menacingly, that he keep silent. A.R. 126.

To avoid further violence, Velasquez-Contreras fled to his uncle's house located three hours away. A.R. 127–28. But he found no peace there, either. After his uncle refused to pay a (different) gang an extortion "tax," the members of it beat up Velasquez-Contreras and told him that he had to work for them. A.R. 154. Fearing for his safety and not wanting to work for that gang, he left for the nearest big city, Comayagua. *Id.* Luckily, he suffered no crime there. A.R. 155–156.

Sometime later, Velasquez-Contreras returned to San Juan Pueblo to see how the investigation into his father's murder was progressing. A.R. 132, 156. But when he visited the police station, officers refused to help him and told him to return another day. A.R. 132. Two days later, while Velasquez-Contreras was still in San Juan Pueblo, unknown individuals shot at him while he was driving, causing him to have an accident. A.R. 133–34.

Fed up, Velasquez-Contreras fled Honduras and entered the United States to seek asylum. A.R. 118, 260. An asylum officer determined he possessed a credible fear of persecution if he returned to Honduras. A.R. 263–64. But in October 2016 the

3

Government charged Velasquez-Contreras as inadmissible for lacking valid immigration documents at the time of his admission to the United States. He then filed an application for asylum, withholding-of-removal, and CAT protection.

The Immigration Judge found Velasquez-Contreras credible but denied all his claims. The Judge rejected his asylum and withholding-of-removal claims after finding his asserted particular social group ("PSG")—"victims of crime where the police do not offer protection"—not to be cognizable.[1] A.R. 75. And the Judge denied his CAT claim after finding insufficient evidence he would face torture upon return to Honduras. The Board of Immigration Appeals affirmed. It agreed that Velasquez-Contreras's proposed PSG was inadequate, and so his asylum and withholding-of-removal claims failed. It also held that he waived any objection to the Immigration Judge's CAT decision by not addressing it in his brief.

## II[2]

" A court may review a final order of removal only if the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). We must

---

[1]     A PSG is a group "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *S.E.R.L. v. Att'y Gen. of U.S.*, 894 F.3d 535, 542 (3d Cir. 2018) (citing *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014)). The Immigration Judge held that Velasquez-Contreras's PSG failed "because it is neither particular nor socially distinct within Honduran society." A.R. 51.

[2]     The Board had jurisdiction under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction under 8 U.S.C. § 1252(a)(1).

deny Velasquez-Contreras's petition for review because his appeal depends on arguments he never raised before the Immigration Judge or Board.

Velasquez-Contreras's asylum and withholding-of-removal petitions require him to show that he either suffered past persecution, or had a well-founded fear of future persecution, because of his membership in a PSG. *See* 8 U.S.C. § 1158(b)(1)(B); § 1101(a)(42)(A); § 1231(b)(3). As noted, the Board held that Velasquez-Contreras' then-suggested PSG failed, and he does not challenge that holding.

Before us, he presents a new PSG—"family members of Jose Velasquez," his father. Opening Br. at 11. But we will not consider this argument because he never made it to the Board. 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if the alien has exhausted all administrative remedies available to the alien as of right."); *see Abdulrahman v. Ashcroft*, 330 F.3d 587, 594–95 (3d Cir. 2003) (explaining that "an alien is required to raise and exhaust his or her remedies as to each claim or ground for relief if he or she is to preserve the right of judicial review of that claim"). Velasquez-Contreras insists he never asserted this PSG because the Immigration Judge failed to develop the record. But we reject that premise because the Judge specifically urged his counsel to argue a family-based PSG, but he failed to do so. In short, because Velasquez-Contreras' petition for review of his asylum and withholding claims rests on a PSG we cannot consider, we must deny his petition for review of those claims.[3]

---

[3] We note, however, a troubling aspect of this case. Velasquez-Contreras's counsel on appeal pointed out in oral argument rebuttal that, unlike his application, the asylum applications of his two sisters were granted *with the consent of the Government* based on the *same* particular social group now urged by Velasquez-Contreras. *See* 11/16/22 Oral

5

We also cannot grant the petition for review of his CAT claim. The Board held Velasquez-Contreras let that claim go by not addressing it in his briefs. **A.R. 5.** He does not challenge that holding, so we will not disturb it.

For the foregoing reasons, we must deny Velasquez-Contreras's petition for review.

---

Arg. 22:09-25:45. Though "not legally dispositive," it is also the case that "the granting of asylum to a family member may be relevant to the determination of the alien's status" if brought to the agency's attention while the alien's case is adjudicated. *Pop v. I.N.S.*, 279 F.3d 457, 462 (7th Cir. 2002).

But as the Government points out, Velasquez-Contreras's earlier counsel did not raise the family-based PSG before the Immigration Judge or the Board, did not bring the sisters' cases to the agency's attention in his case, and did not apprise the agency when his sisters' applications were granted. Nor has he since requested re-opening by the agency based on ineffective assistance of counsel, *cf. Calderon-Rosas v. Att'y Gen.*, 957 F.3d 378 (3d Cir. 2020), or newly discovered evidence, *see Guo v. Ashcroft*, 386 F.3d 556 (3d Cir. 2004).

Ultimately, our review is limited to the issues presented and grounded in "the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A). So although we find the Government's inconsistent treatment of individuals in like circumstances to be disturbing, it is beyond our purview.

6