**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1860
_____

NAIN JOSUE VASQUEZ GONZALEZ,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(Agency Case No. A209-989-182)
Immigration Judge: Adam Panopoulos
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on May 16, 2025

Before: SHWARTZ, MATEY, and FREEMAN, *Circuit Judges*

(Opinion filed: September 18, 2025)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**FREEMAN**, *Circuit Judge*.

Nain Josue Vasquez Gonzalez petitions for review of the Board of Immigration Appeals' (BIA) order denying his motion to remand his claim for relief under the Convention Against Torture (CAT) for a new hearing before an Immigration Judge (IJ). We will grant the petition, vacate the BIA's order, and remand to the BIA with instructions to remand to the IJ for a new hearing.

I

Vasquez is a citizen of El Salvador. In 2016, when he was fifteen years old, he left El Salvador and entered the United States as an unaccompanied minor. Later that year, the Department of Homeland Security (DHS) arrested Vasquez for unlawful entry. Although DHS charged him with removability, it did not commence removal proceedings at the time, and it released him on his own recognizance.

In late 2019, New Jersey authorities arrested Vasquez and charged him as a juvenile with committing aggravated assault. According to the Administrative Record for this immigration matter, the juvenile charge was "dismissed" but Vasquez was sentenced to pay restitution and to avoid contact with the victim. A.R. 609. In 2022, New Jersey authorities brought adult charges against Vasquez for aggravated assault and possessing a knife. Those charges remain pending.

In January 2023, DHS detained Vasquez and commenced removal proceedings, charging him with removability as a noncitizen present without admission or parole. 8 U.S.C. § 1182(a)(6)(A)(i). Through counsel, Vasquez conceded the charge of removability and pursued asylum, withholding of removal, and CAT protection.

2

During a hearing before the IJ in November 2023, Vasquez testified about his upbringing in El Salvador and gang threats that caused him to flee to the United States. He also submitted documentary evidence about his cousin and uncle, whom he testified were killed by gangs; affidavits from family members corroborating his fears of gang violence in El Salvador; and country conditions evidence about how Salvadoran President Nayib Bukele suspended certain civil liberties in March 2022 to address the extreme homicide rates caused by street gangs.

The IJ then asked Vasquez whether he had any tattoos, and Vasquez responded that he had "2003"—the year of his birth—on his left hand. The IJ inquired about a DHS record stating that Vazquez had a "503" tattoo on his right hand. Vasquez responded that he had gotten a "503" tattoo to signify El Salvador's country code, but he had covered that tattoo with green ink while at the detention center after learning that a "503" tattoo could implicate him as a gang member. His aunt testified that he had gotten the "503" tattoo while living in the United States, and that the tattoo signified El Salvador's country code. She also testified that Salvadoran gangs had appropriated that tattoo, and that the Salvadoran president had ordered the arrest of anyone with a "503" tattoo.

After the testimony concluded, the IJ orally denied Vasquez's asylum and withholding claims but requested additional evidence and argument about the CAT claim. The IJ admonished Vasquez's counsel for his "obvious[]" ignorance of Vasquez's "503" tattoo, despite that the tattoo was documented in the DHS record. A.R. 534. The IJ commented that Vasquez was "trying to hide the fact that he has a 503 by performing arts and crafts on his hand. I think it's highly unlikely that that would be missed by the

3

Salvadoran authorities." *Id.* The IJ said a predictive finding about how Salvadoran authorities would view the tattoo was "critical" to Vasquez's CAT claim. A.R. 565. He told counsel, "I think your law firm really needs to step up," and he continued the hearing for one month. A.R. 567.

When the hearing resumed, Vasquez submitted a photograph of the "503" tattoo and gave additional testimony about it. Among other things, Vasquez testified that the tattoo's numbers were no longer discernible.

Three days later, the IJ issued a written order denying Vasquez's applications for relief. With respect to the CAT claim, the IJ considered the conditions in El Salvador, Vasquez's criminal history, and the evidence about the "503" tattoo. He found that Vasquez had not shown that he would more likely than not be perceived as a gang member by the Salvadoran government and subjected to torture in El Salvador.

Vasquez appealed to the BIA. Appearing before the BIA through new counsel, he moved for a remand, arguing that prior counsel had provided ineffective assistance before the IJ. He supported the motion to remand with new evidence not presented to the IJ. This new evidence detailed the state of emergency in El Salvador under which the government has authorized surveillance and detention of persons suspected of having a criminal history.

For instance, an expert report supporting another Salvadoran's CAT application explained that the Salvadoran government closely scrutinizes deportees for tattoos; has authority under a Salvadoran law, known as Decree 717, to surveil deportees with any criminal record—even simply an arrest, and without regard to the charge or case

4

outcome; and receives a dossier from the U.S. government on any deportee with a criminal history or suspicion of gang activity under the Criminal History Information Sharing (CHIS) program.  The expert also stated that the Salvadoran government "target[s]" persons "for simply having tattoos," A.R. 257, and "any tattoo has a cultural connotation of gang affiliation," so tattooed persons are "especially vulnerable to imprisonment" in El Salvador, A.R. 258.  "[C]overing tattoos," the expert added, is "view[ed] with suspicion by . . . state actors as a presumption exists that one may be trying to hide a present or former gang affiliation that would be recognized via particular tattoo designs."  *Id.*  Thus, the expert opined that the CAT applicant who was the subject of her report—"a young, tattooed male with a criminal conviction"—had a high likelihood of being detained in El Salvador and subjected to "human rights abuses[,] including torture[,] that have become the norm during [President] Bukele's . . . State of Exception."  A.R. 260.

Vasquez contended that similar evidence could show his inked-over "503" tattoo would likely lead the Salvadoran government to perceive him as gang affiliated and therefore detain him and subject him to torture based on gang affiliation.

The BIA dismissed Vasquez's appeal and denied his motion to remand.  As to the CAT claim, the BIA reasoned that Vasquez could not show prejudice from any deficient performance of counsel.  It reasoned that, even considering the new evidence submitted with the motion to remand, Vasquez had "not established it is more likely than not he will be tortured upon return to El Salvador."  A.R. 7.

5

II[1]

A

The Due Process Clause of the Fifth Amendment protects noncitizens from ineffective assistance of counsel in removal proceedings. *Fadiga v. Att'y Gen.*, 488 F.3d 142, 155 (3d Cir. 2007). To establish a due-process violation, a noncitizen must show (1) that counsel did not perform competently, *id.* at 157, and (2) "a reasonable likelihood that the result would have been different if . . . [counsel's unprofessional] errors had not occurred," *id.* at 159 (cleaned up). A "reasonable probability means merely a significant possibility," and it does not require a noncitizen to show that "a different outcome was more likely than not." *Calderon-Rosas v. Att'y Gen.*, 957 F.3d 378, 387 (3d Cir. 2020) (cleaned up); *Saint Ford v. Att'y Gen.*, 51 F.4th 90, 95–96 (3d Cir. 2022) (same).

When denying the motion to remand, the BIA determined that Vasquez "ha[d] not demonstrated that but for the deficiency in his prior counsel's representation, he would have met his burden of proof to demonstrate his eligibility for . . . protection under the CAT." A.R. 6. But Vasquez was not required to show that he would prevail but for counsel's deficient performance. *Calderon-Rosas*, 957 F.3d at 387. The BIA's decision contradicted our repeated refrain that a noncitizen "need not show his counsel's

---

[1] The IJ had jurisdiction under 8 C.F.R. § 1208.2, the BIA had jurisdiction over the motion to remand under 8 C.F.R. § 1003.2(a), and we have jurisdiction under 8 U.S.C. § 1252(a)(1). "We review the denial of a motion to remand for abuse of discretion, but questions of law, such as whether the BIA applied the correct legal standard in considering the motion to remand and the underlying claim of denial of due process, are reviewed de novo." *Calderon-Rosas v. Att'y Gen.*, 957 F.3d 378, 383 (3d Cir. 2020) (cleaned up).

6

performance did, in fact, alter the outcome of the earlier proceeding, or even that a different outcome was more likely than not." *Saint Ford*, 51 F.4th at 95–96 (cleaned up). The BIA compounded the mistake, announcing that Vasquez "has not established it is more likely than not he will be tortured upon return to El Salvador." A.R. 7. And the BIA repeated that incorrect legal standard in the heart of its analysis. By requiring Vasquez to meet a too demanding standard of proof, the BIA erred.[2]

B

Assessed under the proper legal standard, the evidence Vasquez submitted with his motion to remand supports a remand to the IJ for a new hearing.[3]

The government makes no attempt to argue that counsel performed adequately before the IJ, *see Calderon-Rosas*, 957 F.3d at 388, for good reason: Counsel's performance before the IJ plainly "fell below an objective standard of reasonableness under prevailing professional norms." *Fadiga*, 488 F.3d at 162 (cleaned up). Before the November 2023 hearing, counsel failed to file a brief or any statement about Vasquez's CAT claim, learn of Vasquez's "503" tattoo (despite its documentation in the DHS record), or even speak with Vasquez. *See* 8 C.F.R. § 1003.102(o), (p), (r), (u). And even after the IJ's admonishments and an opportunity to present additional evidence and

---

[2] Two statements in the analysis that may be reconcilable with the correct legal standard cannot salvage reasoning that is otherwise riddled with reliance on wrong standards.

[3] Given the complete record of counsel's representation of Vasquez before the IJ, there is no need for the BIA to redo the analysis on remand. We can more efficiently resolve the ineffective-assistance-of-counsel claim here and now. *See Fadiga*, 488 F.3d at 162; *Calderon-Rosas*, 957 F.3d at 388 n.6.

argument in December 2023, counsel failed to submit available country conditions evidence supporting the CAT claim. *See Calderon-Rosas*, 957 F.3d at 388 ("[A]n attorney's failure to produce easily available evidence supporting a claim for immigration relief falls below the constitutionally required standard of performance."); *Saint Ford*, 51 F.4th at 96 ("[Petitioner's] former counsel provided ineffective assistance when he failed to submit readily accessible, objective information related to [country condition information] at the heart of [petitioner's] claims.").

There is a reasonable likelihood that the IJ's resolution of the CAT claim would have been different but for counsel's deficient performance. *See Fadiga*, 488 F.3d at 162. Indeed, the IJ sketched a roadmap for the claim's success. Because of the Salvadoran government's apparent response to any charge of criminality, Vasquez's record of criminal charges could raise the likelihood that Salvadoran authorities would detain and torture him under the current state of emergency in that country. This risk could be increased due to the inked-over tattoo on Vasquez's hand, whether Salvadoran authorities learned that it originally said "503" or whether they assumed as much, as one expert opined they would. Especially given the IJ's stated concerns about these issues, there is a reasonable probability the IJ would have granted CAT protection upon considering a properly supported claim.[4] *See Saint Ford*, 51 F.4th at 97 ("Given the IJ's

---

[4] The IJ asserted the CAT-protection claim would still have failed, even "assum[ing] arguendo that information regarding Decree 717 and the Criminal History Sharing Program was submitted into this evidentiary record." A.R. 337 n.1. But, as the IJ acknowledged, no such documents appeared in the record. *Id.* And Vasquez's new

focus on the lack of [country conditions] information . . . , there is a reasonable probability that, if this readily available evidence had been presented, the IJ would have granted protection from removal."); *Calderon-Rosas*, 957 F.3d at 388–89 & n.8. Accordingly, Vasquez has demonstrated ineffective assistance of counsel.

*   *   *

For the foregoing reasons, we will grant the petition, vacate the BIA's order denying Vasquez's motion to remand, and remand to the BIA with instructions to remand to the IJ for a new hearing on Vasquez's application for CAT protection.[5]

---

evidence demonstrates that an adequately developed record and competent argument on these topics and country conditions could have altered the IJ's conclusion that Salvadoran authorities would not "more likely than not . . . deem [Vasquez] to be a gang affiliate." *Id.* For example, the IJ did not have any evidence before him that Vasquez's inked-over tattoo could cause Salvadoran authorities to presume that he was trying to hide a gang affiliation even if they did not know for certain that the tattoo was previously "503."

[5] Judge Matey would deny the petition because the record does not show a reasonable likelihood that Vasquez would have prevailed with different counsel. *Fadiga*, 488 F.3d at 155. Even assuming Vasquez's new evidence shows a significant chance he would be detained in El Salvador, it does not show he is reasonably likely to be tortured. Vasquez's materials suggest that despite 76,000 incarcerations under the state of exception in the last two years, only dozens of allegations of intentional torture surfaced. That is insufficient to demonstrate more than a mere plausibility that Vasquez could prevail on his claim since "[t]he specter of torture must be supported by specific evidence that the individual applicant is more likely than not to be singled out." *Hernandez Garmendia v. Att'y Gen.*, 28 F.4th 476, 484 (3d Cir. 2022).