# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 8, 2023

Lyle W. Cayce
Clerk

_____

No. 22-60293

_____

SERVANDO TORRES,

*Petitioner*,

*versus*

MERRICK GARLAND, *U.S. Attorney General*,

*Respondent*.

_____

Petition for Review of an Order of
the Board of Immigration Appeals
Agency No. A206 551 258

_____

Before RICHMAN, *Chief Judge*, and STEWART and DENNIS, *Circuit Judges*.

PER CURIAM:[*]

Servando Torres petitions this court for review of an order of the Board of Immigration Appeals ("BIA") dismissing his appeal of the decision of the Immigration Judge ("IJ") holding that he was ineligible for cancellation of removal. For the reasons that follow, we DISMISS in part and DENY in part Torres's petition for review.

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 22-60293

## I. FACTUAL & PROCEDURAL BACKGROUND

Torres, a native and citizen of Mexico, entered the United States in 2002. In 2014, after Torres was arrested in Texas for drug possession, the Department of Homeland Security issued a Notice to Appear that charged him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen who entered the United States without being admitted or paroled. In 2015, the immigration judge ("IJ") determined that he was removable as charged.

Torres filed an application for cancellation of removal and, alternatively, for voluntary departure. At a 2019 hearing before the IJ, Torres presented his own supporting testimony, as well as testimony from his teenage son, his mother, and his mother-in-law. Torres also provided documentary evidence, including his financial and criminal records; his children's personal, school, and medical records; and, letters from his friends and family.

Although the IJ concluded that Torres was "largely credible," it denied his application for cancellation of removal as a matter of discretion, reasoning that he failed to establish the requisite exceptional and extremely unusual hardship to his four U.S. citizen children or his lawful permanent resident ("LPR") mother. Additionally, the IJ determined that Torres had failed to prove that he had not been convicted of a disqualifying criminal offense. It further observed that he was statutorily ineligible as a person lacking good moral character due to his admission of drug possession. The IJ then granted Torres voluntary departure.

Torres appealed to the BIA arguing that the IJ erred in determining that he had failed to show that his U.S. citizen children would not suffer the requisite hardship and that he was not disqualified from relief due to his criminal history. He further asserted that his due process rights were violated in the proceedings before the BIA because the record was incomplete.

2

Specifically, he complained that his arguments on appeal were negatively impacted by the fact that the transcript of his merits hearing before the IJ used the word "indiscernible" in place of his, or witness testimony on his behalf, 71 times.

In April 2022, the BIA dismissed Torres's appeal and reinstated his period of voluntary departure. The BIA adopted and affirmed the IJ's decision that Torres had failed to demonstrate that his removal would result in the requisite hardship to his U.S. citizen children.  The BIA also noted that Torres had waived any challenge to the IJ's finding that he had not established the requisite hardship to his LPR mother.  Additionally, it declined to reach the IJ's alternative conclusions that Torres had failed to establish that he was of good moral character and that he did not have a disqualifying criminal offense. Finally, it rejected Torres's due process argument, reasoning that the record was sufficiently complete to enable meaningful appellate review. It further pointed out that Torres had failed to identify any relevant missing testimony or show substantial prejudice based on the incomplete transcript.

Torres filed this petition for review.

## II. STANDARD OF REVIEW

We have authority to review only the BIA's decision, but we can consider the IJ's decision to the extent it influenced the BIA. *Singh v. Sessions*, 880 F.3d 220, 224 (5th Cir. 2018) (citation omitted). Factual findings are reviewed under the substantial evidence test. *See Chun v. INS*, 40 F.3d 76, 78 (5th Cir. 1994). "Under substantial evidence review, we may not reverse the BIA's factual determinations unless we find not only that the evidence supports a contrary conclusion, but that the evidence *compels* it." *Id.* (citations omitted) (emphasis in original). Questions of law, including whether this court has jurisdiction, are reviewed de novo. *Arulnanthy v.*

No. 22-60293

*Garland*, 17 F.4th 586, 592 (5th Cir. 2021). Constitutional challenges, such as due process challenges, are also reviewed de novo. *Nkenglefac v. Garland*, 34 F.4th 422, 427 (5th Cir. 2022) (citations omitted).

## III. DISCUSSION

On appeal, Torres argues that the BIA erred in adopting the IJ's ruling regarding Torres's failure to prove "exceptional and extremely unusual hardship" to his qualifying relatives by improperly analyzing the hardship factors and failing to consider all of the factors in the aggregate. Torres further asserts that the BIA erred in holding that he was not substantially prejudiced by the incomplete transcript from the proceedings before the IJ. We address each argument in turn.

### A. Cancellation of Removal

Cancellation of removal is a discretionary form of relief. *See* 8 U.S.C. § 1229b(b)(1). To be eligible for a discretionary grant of cancellation of removal, an applicant must meet certain requirements, including having no convictions for a crime of moral turpitude. *See* § 1229b(b)(1); § 1182(a)(2). The applicant must also show that his removal would result in "exceptional and extremely unusual hardship" to a qualifying relative, namely a spouse, parent, or child who is a citizen or LPR of the United States. *Id.* The hardship standard requires "a truly exceptional situation in which a qualifying relative would suffer consequences substantially beyond the ordinary hardship that would be expected when a close family member leaves this country." *Trejo v. Garland*, 3 F.4th 760, 775 (5th Cir. 2021) (internal quotation marks and citation omitted).

Pursuant to 8 U.S.C. § 1252(a)(2)(B)(i), no court shall have jurisdiction to review the denial of certain types of discretionary relief, including cancellation of removal under § 1229b. Notwithstanding this provision, 8 U.S.C. § 1252(a)(2)(D) provides that jurisdiction is expressly

4

No. 22-60293

retained for reviewing courts to address constitutional claims and questions of law.

Torres contends that he satisfied the requirements for cancellation of removal and that the BIA legally erred in adopting the IJ's ruling that he had failed to show that his U.S. citizen relatives would not suffer exceptional and extremely unusual hardship if he were removed. According to Torres, the BIA failed to properly consider the hardship factors as set forth in *In re Gonzalez Recinas*, 23 I & N Dec. 467, 471 (BIA 2002), and *In re Monreal-Aguinaga*, 23 I & N Dec. 56, 63 (BIA 2001). Specifically, he complains that the BIA's decision erroneously failed to properly consider the evidence he submitted in support of his application relating to: the adverse country conditions in Mexico and the negative effect they could have on his children, his inability to support his economically dependent children with a job in Mexico, his inability to obtain an immigrant visa in the near future, and his children's unfamiliarity with Mexico. *Id.*

We are deprived of jurisdiction to address these arguments, however, under 8 U.S.C. § 1252(a)(2)(B)(i). Relying on the Supreme Court's decision in *Patel v. Garland*, 142 S. Ct. 1614, 1622 (2022), this court in *Castillo-Gutierrez v. Garland*, recently held that the hardship determination for purposes of cancellation of removal "is a discretionary and authoritative decision" which "is beyond [this court's] review" under the jurisdiction-stripping provision of § 1252(a)(2)(B)(i). 43 F.4th 477, 481 (5th Cir. 2022) ("Importantly here, the *Patel* majority pointed out that a determination that a citizen would face exceptional and extremely unusual hardship due to an alien's removal is a discretionary and authoritative decision which even the Government agreed would be barred by § 1252(a)(2)(B)(i), notwithstanding § 1252(a)(2)(D)."). Accordingly, we lack jurisdiction to consider Torres's challenge to the BIA's determination that he failed to show the necessary hardship for cancellation of removal. *See Castillo-Gutierrez*, 43 F.4th at 481.

We likewise lack jurisdiction to review Torres's argument that the BIA failed to properly consider the hardship factors set forth in *In re Gonzalez Recinas*, 23 I & N Dec. at 471, and *In re Monreal-Aguinaga*, 23 I & N Dec. at 63. *See Sattani v. Holder*, 749 F.3d 368, 372 (5th Cir. 2014) (holding that a "claim that the IJ did not properly take into account all the hardship factors merely asks this [c]ourt to replace the IJ's evaluation of the evidence with a new outcome, which falls squarely within the jurisdictional bar of 8 U.S.C. § 1252(a)(2)(B)"); *see also Jebril v. Garland*, 855 F. App'x 223, 224 (5th Cir. 2021) (stating that "[Petitioner's] claim[s] that the IJ and BIA failed to consider all of the factors or assigned improper weight to certain evidence" were not "constitutional claims or questions of law sufficient to confer jurisdiction to review the decisions of the IJ and BIA" under § 1252(a)(2)(D) (citation omitted)).

Accordingly, we dismiss for lack of jurisdiction Torres's claim that the BIA erred in dismissing his appeal of the IJ's decision denying his application for cancellation of removal. *See Castillo-Gutierrez*, 43 F.4th at 481; *Sattani*, 749 F.3d at 372.

## B. Incomplete Transcript of Hearing Before the IJ

As previously stated, notwithstanding 8 U.S.C. § 1252(a)(2)(B)(i)'s jurisdiction-stripping provision, § 1252(a)(2)(D) provides that jurisdiction is expressly retained for a reviewing court such as this one to address questions of law and constitutional claims, such as the due process challenge that Torres advances here. *See Castillo-Gutierrez*, 43 F.4th at 481. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). "The Fifth Amendment affords an alien the right to (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard." *Hadwani v. Gonzales*, 445 F.3d 798, 800 (5th

Cir. 2006) (internal quotation marks and citation omitted). "[A] complete record shall be kept of all testimony and evidence produced at [a removal] proceeding." *See* 8 U.S.C. § 1229a(b)(4)(C).

To prevail on a due process claim, a petitioner must demonstrate that he was "substantially prejudiced" by the error. *Anwar v. INS*, 116 F.3d 140, 144 (5th Cir. 1997). In turn, "[p]roving substantial prejudice requires an alien to make a prima facie showing that the alleged violation affected the outcome of the proceedings." *See Okpala v. Whitaker*, 908 F.3d 965, 971 (5th Cir. 2018).

Nevertheless, "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the [Due Process Clause]'s protection of liberty and property." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Thus, as we have explained, "the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest." *Assaad v. Ashcroft*, 378 F.3d 471, 475 (5th Cir. 2004) (internal quotation marks and citation omitted); *see also Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) (acknowledging that "a statute which provides no more than a mere hope that the benefit will be obtained is not protected by due process") (internal quotation marks, ellipsis, and citation omitted).

Here, Torres asserts that the BIA erred in rejecting his due process claim arising from the incomplete transcript of his merits hearing before the IJ. He contends that he has been "prejudiced by the incomplete transcript because [he was] unable to reference the 'exceptional and extremely unusual hardship' evidence which [he] and [his] witnesses mentioned during the hearing," and that with a complete transcript, he "would likely be able to properly explain how the [IJ] and the BIA erred in denying [him] relief in the form of Cancellation of Removal." Specifically, he complains that the

transcript was marked "indiscernible" during relevant questioning concerning his children, the adverse country conditions in Mexico, and his financial obligations to his family.

The Government disagrees. Relying largely on this court's reasoning in *Hadwani*, 445 F.3d at 801, it counters that since there is no protected liberty interest in cancellation of removal, Torres's claim is not actually a constitutional claim exempted from the jurisdictional bar of § 1252(a)(2)(B) but is rather "'an abuse of discretion argument cloaked in constitutional garb.'" The Government alternatively argues that if Torres's purported due process claim is not subject to § 1252(a)(2)(B)'s jurisdictional bar, the BIA still did not err in its hardship determination. It continues that there is no protected liberty interest in discretionary forms of relief such as cancellation of removal; and, even if he could make out a cognizable due process argument, Torres has failed to show substantial prejudice. We agree with the Government's alternative argument.

It is worth noting that the *Hadwani* court did not expressly deny jurisdiction to consider the petitioner's constitutional claims. 445 F.3d at 800-01. Instead, citing the lack of a liberty interest in discretionary relief, the court "rejected" the petitioner's constitutional claims as "without merit." *Id.* at 801. Indeed, this court has consistently exercised jurisdiction over due process claims such as this one, pursuant to § 1252(a)(2)(D), while subsequently denying relief based on the lack of a protected liberty interest in discretionary decisions such as a denial of cancellation of removal or reopening. *See Mejia v. Whitaker*, 913 F.3d 482, 490 (5th Cir. 2019) ("[T]his court has held that no liberty interest exists in a motion to reopen, and therefore due process claims are not cognizable in the context of reopening proceedings."); *Luna Esparza v. Garland*, No. 21-60959, 2022 WL 16914532, at *1 (5th Cir. Nov. 14, 2022) (unpublished) (denying Petitioner's due process claim because although "[t]his court still has jurisdiction to consider

constitutional challenges to the denial of cancellation of removal . . . the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest" (citations omitted)); *Abdul-Khaliq v. Garland*, No. 20-60747, 2022 WL 1792545, at *1 (5th Cir. June 2, 2022) (unpublished) (holding that Petitioner's "claim that the BIA's decision not to reopen the proceedings violated [his] due-process rights [was] not cognizable" because "no liberty interest exists in a motion to reopen"); *Reynoso-Ramirez v. Barr*, 786 F. App'x 473, 473–74 (5th Cir. 2019) (unpublished) (explaining that because "[Petitioner did] not have a constitutionally protected liberty interest in the discretionary relief of cancellation of removal or in eligibility for that relief . . . her due process rights [were] not implicated by the [BIA]'s decision" denying her petition for cancellation of removal).

Falling in step with our prior cases to address this issue, we hold that Torres's due process claim is meritless because "the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest." *Assaad*, 378 F.3d at 475. Even if this was not the case, Torres has failed to show that the BIA erred in rejecting his due process argument. As previously noted, the BIA rejected Torres's argument regarding the incomplete transcript on grounds that the record was sufficiently complete to enable meaningful appellate review and because Torres had failed to identify any relevant missing testimony or show substantial prejudice. We agree. As the Government points out, Torres has failed to show how the omitted testimony would have helped his application for cancellation of removal. Moreover, many of the indiscernible responses were clarified by subsequent testimony and other record evidence. For example, numerous responses that Torres gave when asked questions about his children were marked "indiscernible," but his children later clarified those responses with their own discernible testimony. Likewise, when Torres

No. 22-60293

was questioned about his financial obligations to his family, his response was marked indiscernible. Later testimony from Torres's mother-in-law, however, adequately responded to the questions by stating that he was the "only economic support" for his family. In sum, Torres has not shown that he was substantially prejudiced by the existence of the incomplete transcript because as the record confirms, the "indiscernible" responses were clarified through subsequent discernible testimony and other record evidence. *See Anwar*, 116 F.3d at 144. Thus, even if the transcript was "complete," *i.e.*, without any "indiscernible" responses, the outcome of the proceedings would not have changed. *See Okpala*, 908 F.3d at 971.

Consequently, we hold that the BIA did not err in rejecting Torres's due process claim. *See* 8 U.S.C. § 1229b(b)(1).

## IV. CONCLUSION

For the foregoing reasons, Torres's petition for review is DISMISSED in part and DENIED in part.

No. 22-60293

James L. Dennis, *Circuit Judge*, specially concurring:

I concur in the majority opinion's assessment that binding circuit precedent requires us to conclude an alien has no liberty interest in cancellation of removal because it is a discretionary form of relief and thus also requires us to reject the Petitioner's due process claim. *See, e.g.*, *Gutierrez-Moralez v. Homan*, 461 F.3d 605, 609 (5th Cir. 2006); *see also Reynoso-Ramirez v. Barr*, 786 F. App'x 473, 473 (5th Cir. 2019) (unpublished); *Cruz-Vizacarra v. Lynch*, 609 F. App'x 257, 258 (5th Cir. 2015) (unpublished); *Osuagwu v. Holder*, 351 F. App'x 973, 974 (5th Cir. 2009) (unpublished); *Singh v. Holder*, 338 F. App'x 477, 480 (5th Cir. 2009) (unpublished). However, I write separately to explain how this precedent is unsound—as well as inconsistently applied—and should be reconsidered.

The Fifth Amendment protects a person from deprivation of life, liberty, or property without due process of law. U.S. Const., amend. V. Therefore, in order to succeed on a due process claim, a person must show, as relevant here, "deprivation of a liberty interest." *Mendias-Mendoza v. Sessions*, 877 F.3d 223, 228 (5th Cir. 2017) (citing *Assaad v. Ashcroft*, 378 F.3d 471, 475 (5th Cir. 2004)). A liberty interest "may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by [federal] laws or policies." *See Jordan v. Fisher*, 823 F.3d 805, 810 (5th Cir. 2016) (quoting *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005)) (Fourteenth Amendment due process); *see also Butts v. Martin*, 877 F.3d 571, 589 (5th Cir. 2017) (similarly noting for Fifth Amendment due process, "a plaintiff must show that he was deprived of a liberty interest protected by the Constitution or statute").

The Supreme Court has called it "well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993) (citing *Yamataya v.*

*Fisher* (*The Japanese Immigrant Case*), 189 U.S. 86, 100–101 (1903)). "The Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Thus, "once an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes," *Landon v. Plasencia*, 459 U.S. 21, 32 (1982), and those "aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). We have noted that the Supreme Court has frequently framed this due process right in terms of "liberty"[1] and have stated that this treatment "broadly suggest[s] that the nature of the private interest affected by deportation is encompassed in the concept of 'liberty' as that term is used in the due process clause." *Haitian Refugee Ctr. v. Smith*, 676 F.2d 1023, 1037

---

[1] *See, e.g.*, *The Japanese Immigrant Case*, 189 U.S. at 100-01 ("[T]his court has never held, nor must we now be understood as holding, that administrative officers, when executing the provisions of a statute involving the liberty of persons, may disregard the fundamental principles that inhere in 'due process of law' as understood at the time of the adoption of the Constitution. One of these principles is that no person shall be deprived of his liberty without opportunity, at some time, to be heard, before such officers, in respect of the matters upon which that liberty depends . . . . Therefore, it is not competent for the Secretary of the Treasury or any executive officer, at any time within the year limited by the statute, arbitrarily to cause an alien who has entered the country, and has become subject in all respects to its jurisdiction, and a part of its population, although alleged to be illegally here, to be taken into custody and deported without giving him all opportunity to be heard upon the questions involving his right to be and remain in the United States"); *Bridges v. Wixon*, 326 U.S. 135, 154 (1945) ("Here the liberty of an individual is at stake. . . . Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom."); *Wong Yang Sung v. McGrath*, 339 U.S. 33, 50, 70 (1950) ("A deportation hearing involves issues basic to human liberty and happiness and, in the present upheavals in lands to which aliens may be returned, perhaps to life itself.").

n.30 (5th Cir. Unit B 1982); *see also Chike v. I.N.S.*, 948 F.2d 961, 961 (5th Cir. 1991) (describing the interest at issue during deportation as a "significant liberty interest").

However, as noted, we have held that, because there is no liberty interest in discretionary relief, these well-established due process protections in removal proceedings do not extend to requests for such discretionary relief as a good-faith marriage waiver of removal, *Assaad*, 378 F.3d at 476; cancellation of removal, *Gutierrez-Morales*, 461 F.3d at 609; or adjustment of status, *De Hoyos v. Mukasey*, 551 F.3d 339, 343 (5th Cir. 2008).[2] This view has its roots in Supreme Court cases holding prisoners have no liberty interest in decisions left by statute or regulation to the discretion of administrators, such as assignment of prisoners to particular prisons, *Meachum v. Fano*, 427 U.S. 215, 229 (1976); *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); commutation of sentences when there is "no limit" in the statute on criteria to consider, *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 466 (1981); or exclusion of specific visitors, *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 463–65 (1989).[3]

We are not alone in finding no liberty interest in the discretionary relief available in removal proceedings, as the First, Fourth, Sixth, Seventh, Eighth, and Eleventh circuits follow the same reasoning. *See, e.g.*, *Rivera v. Sessions*, 903 F.3d 147, 151 (1st Cir. 2018); *Yuen Jin v. Mukasey*, 538 F.3d 143, 156–57 (2d Cir. 2008); *Smith v. Ashcroft*, 295 F.3d 425, 430 (4th Cir. 2002);

---

[2] We have found no liberty interest in motions to reopen for the same reason. *See, e.g.*, *Ramos-Portillo v. Barr*, 919 F.3d 955, 963 (5th Cir. 2019).

[3] *See, e.g.*, *Assaad*, 378 F.3d at 476 (citing *Dumschat*, 452 U.S. at 465). These cases, in turn, can trace back to the holding in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972), that, in order to have a property interest protected by due process, a person must "have a legitimate claim of entitlement" to the benefit, not merely "an abstract need or desire for it" or "a unilateral expectation of it."

*Ashki v. I.N.S.*, 233 F.3d 913, 921 (6th Cir. 2000); *Pinos-Gonzoles v. Mukasey*, 519 F.3d 436, 441 (8th Cir. 2008); *Scheerer v. U.S. Att'y Gen.*, 513 F.3d 1244, 1253 (11th Cir. 2008). However, even these circuits have at times inconsistently considered due process arguments when discretionary relief was at issue. *See, e.g.*, *Rusu v. U.S. I.N.S.*, 296 F.3d 316, 321 & n.8 (4th Cir. 2002) (asylum); *Garza-Moreno v. Gonzales*, 489 F.3d 239, 241–42 (6th Cir. 2007) (cancellation of removal); *Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1275–76 (11th Cir. 2009) (asylum). We have been similarly guilty of such inconsistency. *See, e.g.*, *Maniar v. Garland*, 998 F.3d 235, 241–42 (5th Cir. 2021) (waiver of inadmissibility); *Monteon-Camargo v. Barr*, 918 F.3d 423, 430 (5th Cir. 2019) (cancellation of removal); *Anwar v. I.N.S.*, 116 F.3d 140, 144–45 (5th Cir. 1997) (asylum).

However, not all circuits entirely bar consideration of process. Some circuits agree there is no liberty interest in discretionary relief but still find ways to examine procedural fairness. The Seventh Circuit has held aliens "do not have a right to due process in hearings for discretionary relief" but frequently "construe[s] such claims as arguments 'that the IJ's hearing violated [the] statutory and regulatory provisions' applicable to the hearing in question." *Delgado v. Holder*, 674 F.3d 759, 766 (7th Cir. 2012) (second alteration in original) (quoting *Apouviepseakoda v. Gonzales*, 475 F.3d 881, 885 (7th Cir. 2007)). The Seventh Circuit has also suggested in dicta that "[t]here may be an important distinction between an alien's claim that she has a right to seek discretionary relief, and the very different claim that she has a right to have that discretion exercised in a particular way. Depending on the nature of the underlying interest implicated, denial of the first might violate basic principles of due process, even though it is clear that no claim can be stated with regard to the latter." *United States v. Roque-Espinoza*, 338 F.3d 724, 730 (7th Cir. 2003). The Tenth Circuit has similarly held that, while a "petitioner has no liberty or property interest in obtaining purely

No. 22-60293

discretionary relief," he or she must still be afforded "the minimal procedural due process rights for an 'opportunity to be heard at a meaningful time and in a meaningful manner'" as to this relief. *Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009) (first quoting *Dave v. Ashcroft,* 363 F.3d 649, 653 (7th Cir. 2004); and then quoting *de la Llana–Castellon v. I.N.S.*, 16 F.3d 1093, 1096 (10th Cir. 1994)); *see also Barrera-Quintero v. Holder*, 699 F.3d 1239, 1248–49 (10th Cir. 2012) (analyzing such minimal procedural due process).

Finally, still other circuits routinely address due process claims in petitions despite the discretionary nature of the relief sought. The Ninth Circuit has stated that "procedural due process . . . , which [is] predicated on the right to a full and fair hearing, [is] not affected by the nature of the relief sought," including "discretionary relief" in a removal proceeding. *Fernandez v. Gonzales*, 439 F.3d 592, 602 n.8 (9th Cir. 2006) (citation omitted).[4] Recently, the Third Circuit rejected the argument that there is no liberty interest in discretionary relief, holding "petitioners seeking discretionary relief are entitled to fundamentally fair removal proceedings, which constitutes a protected interest supporting a due process claim." *Calderon-Rosas v. Att'y Gen. U.S.*, 957 F.3d 378, 385–86 (3d Cir. 2020). It reasoned that "recogni[zing] . . . due process claims by petitioners seeking discretionary relief is consistent with bedrock principles of Supreme Court case law" extending due process protections to aliens in deportation proceedings. *Id.* at 385. Moreover, the argument that due process does not protect discretionary relief "conflates the existence of a statutory entitlement with the fairness of the process by which a petitioner may be deprived of it." *Id.* at 386. "[W]hen Congress directs an agency to establish a procedure . . .

---

[4] However, the Ninth Circuit has found no liberty interest in voluntary departure. *Tovar-Landin v. Ashcroft*, 361 F.3d 1164, 1167 (9th Cir. 2004).

it can be assumed that Congress intends that procedure to be a fair one." *Id.* (quoting *Marincas v. Lewis*, 92 F.3d 195, 203 (3d Cir. 1996)).

Echoing the Third Circuit's reasoning, the Supreme Court, in describing the historical practice in immigration law, has noted the "distinction between eligibility for discretionary relief, on the one hand, and the favorable exercise of discretion, on the other hand." *I.N.S. v. St. Cyr*, 533 U.S. 289, 307 (2001) (holding that district courts could review via habeas corpus constitutional or legal challenges to final orders of removal), *superseded by statute on other grounds*, REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231. "Eligibility that was 'governed by specific statutory standards' provided 'a right to a ruling on an applicant's eligibility,' even though the actual granting of relief was 'not a matter of right under any circumstances, but rather is in all cases a matter of grace.'" *Id.* (quoting *Jay v. Boyd*, 351 U.S. 345, 353–354 (1956)). As an example, the Court noted that in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), "even though the actual suspension of deportation authorized by § 19(c) of the Immigration Act of 1917 [that the alien had applied for] was a matter of grace," the Court had "held that a deportable alien had a right to challenge the Executive's failure to exercise the discretion authorized by the law." *Id.* Of particular note, the Court in *Accardi* stated it was affording the alien the "due process required by the regulations in such proceedings." 347 U.S. at 268.

We have in fact embraced a liberty interest of the sort described by the Third Circuit and Supreme Court—the opportunity to present a claim for discretionary relief—but the case concerned only the opportunity to seek asylum. *Haitian Refugee Ctr.*, 676 F.2d at 1037–39. We held that, while a previous decision had found an alien had "no constitutionally protected right to political asylum itself," aliens have a separate "right to petition" for asylum. *Id.* at 1039. Specifically, the court "f[ound] in the federal regulations

No. 22-60293

establishing an asylum procedure—regulations duly promulgated pursuant to congressional delegation of authority to the Attorney General and having the force and effect of law—, when read in conjunction with the United States' commitment to resolution of the refugee problem as expressed in the United Nations Protocol Relating to the Status of Refugees and in 8 U.S.C. § 1253(h), a clear intent to grant aliens the right to submit and the opportunity to substantiate their claim for asylum." *Id.* at 1038. Accordingly, the court "identified . . . an entitlement created by the federal government" by which an alien "may at least send his message and be assured of the ear of the recipient." *Id.* at 1039 & n.39. "Whether this minimal entitlement be called a liberty or property interest, . . . it [was] sufficient to invoke the guarantee of due process." *Id.* at 1039.

Following the reasoning of the Third Circuit in *Calderon-Rosas*, the Seventh Circuit in *Roque-Espinoza*, the Tenth Circuit in *Arambula-Medina*, the Supreme Court in *St. Cyr* and *Accardi*, and our court in *Haitian Refugee Center*, I am persuaded that, when Congress establishes a set procedure for an alien to submit and substantiate a claim for discretionary relief in removal proceedings, the alien has a liberty interest in fairly presenting his or her case, which is distinct from an interest in the discretionary relief itself. In this case, Congress has allowed aliens to apply for cancellation of removal and established specific criteria the Attorney General must find in order to grant such cancellation, in his discretion. 8 U.S.C. § 1229b. Congress has established a procedure by which an immigration judge decides applications for relief from removal such as cancellation of removal, and this procedure places the burden of proof on the alien. 8 U.S.C. § 1229a(a), (c)(4). During these proceedings, relevant to the Petitioner's complaint in this case, "a complete record shall be kept of all testimony and evidence produced at the proceeding." *Id.* § 1229a(b)(4)(C); *see also* 8 C.F.R. § 1240.9. In my view, these procedures give an alien a right to apply for cancellation of removal and

present evidence to substantiate his or her claim. *See Calderon-Rosas*, 957 F.3d at 385–86; *Arambula-Medina*, 572 F.3d at 828; *cf. St. Cyr*, 533 U.S. at 307; *Accardi*, 347 U.S. at 268; *Haitian Refugee Ctr.*, 676 F.2d at 1037-39; *Roque-Espinoza*, 338 F.3d at 730. Surely, were the Attorney General to decide applications arbitrarily rather that in conformity with the process Congress has provided—say, by granting any application submitted on a Tuesday and denying the rest—we would not say this comports with due process.

However, there is another dimension to consider as well. Several commentators have taken a different perspective on the issue of the process due to aliens seeking discretionary relief, focusing not on the discretionary relief but the ultimate decision whether or not to deport the alien. *See* Gerald L. Neuman, *Discretionary Deportation*, 20 Geo. Immigr. L.J. 611, 635–37 (2006); Christen Chapman, *Relief from Deportation: An Unnecessary Battle*, 44 Loy. L.A. L. Rev. 1529, 1555-60 (2011); Paige Taylor, *Immigration Law*, 39 Tex. Tech. L. Rev. 829, 837 (2007). Because the Supreme Court has recognized that aliens are entitled to due process in deportation proceedings and has frequently suggested deportation affects a liberty interest, these commentators argue the decision whether to grant discretionary relief should be recontextualized as a decision whether or not to deport the alien—*i.e.*, deprive the alien of this liberty interest—and, in that way, even if the alien is not entitled to discretionary relief, he or she is still entitled to a fair hearing to avoid deportation by presenting their applications for relief. Neuman, *supra*, at 636–38; Chapman, *supra*, at 1558–59. They analogize the proceeding to a criminal sentencing, which must satisfy due process concerns, even though the ultimate sentence is in the discretion of the judge. Neuman, *supra*, at 637; Chapman, *supra*, at 1559; *see Gardner v. Florida*, 430 U.S. 349, 358 (1977) ("[I]t is now clear that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause. . . . The defendant has a legitimate interest in the character

of the procedure which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process."). This reasoning reinforces my view that aliens have an interest in the opportunity to present their applications for relief. Indeed, the Third Circuit pointed to this underlying liberty interest as support for extending due process protections to applications for discretionary relief. *Calderon-Rosas*, 957 F.3d at 385 (reasoning that "recogni[zing] . . . due process claims by petitioners seeking discretionary relief is consistent with bedrock principles of Supreme Court case law" extending due process protections to aliens in deportation proceedings). This reasoning is also quite similar to the Tenth Circuit's approach of finding "no liberty or property interest in obtaining purely discretionary relief," but still examining "the minimal procedural due process rights for an 'opportunity to be heard at a meaningful time and in a meaningful manner.'" *Arambula-Medina*, 572 F.3d at 828 (first quoting *Dave,* 363 F.3d at 653; and then quoting *de la Llana–Castellon,* 16 F.3d at 1096); *see also Barrera-Quintero*, 699 F.3d at 1248–49.

For these reasons, I specially concur. While we are bound by precedent to conclude the Petitioner has no liberty interest in the discretionary relief of cancellation of removal, a survey of cases reveals this precedent is not only in tension with Supreme Court precedent as to the due process rights of aliens subject to deportation proceedings but also inconsistently applied among—as well as within—the circuits. This issue implicates the fairness owed to an often-vulnerable group, and we as a society—much more as judges—should ensure a consistent approach to the due process owed to aliens subject to deportation—a right that has been recognized for over a century. *See The Japanese Immigrant Case*, 189 U.S. at 100–01. I urge our court to reconsider its own jurisprudence and for the Supreme Court to bring consistency to the varied approaches nationwide.